UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT

UNITED STATES OF AMERICA,

    Plaintiff,

CASE NUMBER: 00-6211-Cr-Hurley/Vitunac

AHMAD ALMASRI AND
NADIA ALMASRI,

    Defendant.
_____/

### RESPONSE TO ORDER OF APRIL 5, 2001

**COMES NOW, MARK E. NeJAME**, formerly attorney of record for Ahmad Almasri and Nadia Almasri in the above styled case, and responds to the Order entered by the Honorable Ann E. Vitunac on April 5, 2001, and states:

1. That undersigned counsel never received any written order from this Honorable Court directing him to do that which the Order dated April 5, 2001, accuses him of not doing.

2. That undersigned counsel relied on the understanding of his law partner, Eric H. Barker, who appeared at the hearing. Undersigned counsel upon hearing of this Court's desire to have a hearing on March 16, 2001, arranged to have his law partner present. Notice was not given of the March 16th hearing, until either March 13th or 14th, at which point undersigned counsel faxed a Notice of Conflict to this Honorable Court. Undersigned counsel had a previously scheduled sentencing hearing before the Honorable John E. Steele in regards to United States of America v. Carlos Vargas, case number 2:00-Cr-72-FtM-29DNF, at 10:00 a.m. in Fort Myers, Florida.

3. That undersigned counsel's staff, in further efforts to accommodate this Honorable Court's directive that Mark E. NeJame appear on March 16, 2001, reached out to the Deputy Clerk of the Court in an effort to reschedule the March 16th, 10:00 a.m. time. Despite the efforts of undersigned counsel and his staff, the hearing was not rescheduled to allow undersigned counsel to personally appear.

4. That as an effort to respect and honor this Court's request, plans were changed within the undersigned counsel's office, so that an attorney could and would be present. There was no notice provided by this Honorable Court as to what the nature of the Court's inquiry might be, so that Eric H. Barker, who was not even the primary or secondary attorney on the case, could properly or fairly respond.

5. That undersigned counsel would never disrespect this, or any, courts', order. Undersigned counsel believed, as does his law partner from the oral pronouncement previously made from the bench, that he more than fully satisfied this Court's inquiry. Moreover, undersigned counsel had also communicated with AUSA, Lawrence Barfeld, before sending the letter to the Court, further confirming that he was responding in compliance with this Honorable Court's order. Mr. Bardfeld, also believed that Mark E. NeJame's letter satisfied this Court's inquiry.

6. That undersigned counsel is not being antagonistic or combative. However, an order was entered in which undersigned counsel was accused of not complying with this Court's oral pronouncement, and undersigned counsel wants to advise, clarify, and rectify any misunderstanding or miscommunication, which might exist.

7. That undersigned counsel has made every effort to accommodate this Court, as well as protecting his former clients. This Honorable Court entered an order on September 8, 2000, which stated in relevant part: "...Attorney Mark NeJame may jointly represent both Nadia and Ahmad Almasri in this matter with the following conditions:

   a. If there is a trial and Nadia Almasri is either a witness or a Defendant against or with Ahmad Almasri, joint representation will no longer be permitted; and

   b. If there is a trial and Ahmad Almasri is either a witness or a Defendant against or with Nadia Almasri, joint representation will no longer be permitted; and

   c. Should either scenario occur, attorney NeJame is ordered to bring such a conflict to the Court's attention."

8. That neither scenario occurred. Moreover, the AUSA announced to undersigned counsel personally and also on the record, that he was not calling one party against the other. Nevertheless, the Court, on its own motion and without notice to undersigned counsel allowing him or his clients the opportunity to be heard, modified its order of September 8, 2000, and discharged undersigned counsel from representation of either party, despite both Defendants adamant desire to keep Mark E. NeJame as counsel.

9. That although there was no conflict of interest identified by undersigned counsel or the Assistant United States Attorney, and in fact any conflict had been eliminated by the government's announcement that it would not call one party

against the other, undersigned counsel honored this Court's position and assisted both parties in securing new counsel.

10. That undersigned counsel has respect for this Court. Undersigned counsel has in no way, shape or manner attempted to "direct of control the defenses of the Almasri's", as the court stated in its order. Quite the contrary. Several lawyers were provided to each of the Almasri's, those attorneys being from different cities. Despite the insistence of the Almasri's for undersigned counsel to continue representing them, undersigned counsel spent hours with them, counseling them in an effort to assist them in obtaining a new attorney each felt they could trust and felt comfortable with. The choice was theirs.

11. That undersigned counsel was not and is not attempting to keep monies unearned. The Almasri's insisted upon a single attorney as they were very familiar with undersigned counsel. This issue was immediately brought before the United States Attorneys Office, who perceived no conflict and was also brought before this Honorable Court.

12. That the letter dated March 21, 2001, was an effort to make sure that the Almasri's were able to pay counsel, regardless of any contingency, however remote. It was not an effort to keep money as the Court alluded or to "parse out his money" to the new attorneys.

13. That the Almasri's were charged a flat fee of Fifty Thousand Dollars ($50,000.00), including a trial if necessary. This is a standard practice to charge a flat fee in a criminal case, and is the only way undersigned counsel has ever charged a client in a criminal case in 20 years. It is the standard in the industry and is ethical and

proper. As such, all fees have been earned and as such, have been spent.

14. That regardless, undersigned counsel believes that to keep all the money would not be right and would work an additional hardship on the Almasri's.

15. That time records are not kept in criminal cases, were not kept in this case and are not the standard in the industry. As such, a review of the file, discussions with other in the law office who worked on the case, discussions with both new attorneys and with AUSA Lawrence Bardfeld, allows undersigned counsel to estimate actual time expended.

16. That undersigned counsel reports the following:

   a. That after speaking with attorney F. Wesley Blankner, new counsel for Ahmad Almasri, he estimates the case and file as provided and prepared by undersigned counsel to be 75-80 percent complete. A plea had been negotiated, prepared, and is awaiting signature, hours upon hours of research and investigation had been done and substantial assistance was occurring. Moreover, that case has been thoroughly reviewed with new counsel.

   b. That after speaking with attorney Richard Docobo, new counsel for Nadia Almasri, he also estimates the case and file as provided and prepared by undersigned counsel to also be 75-80 percent complete. Consideration of a misdemeanor had been researched thoroughly; immigration issues regarding her alien status has been thoroughly researched, a substantial motion to suppress her statements had been prepared and is ready to be argued if necessary. Moreover, the case has been thoroughly reviewed

with new counsel.

17. That 25 percent (25%) of Fifty Thousand Dollars ($50,000.00) is Twelve Thousand Five Hundred Dollars ($12,500.00), which represents the remaining work that presumably needs to be done, according to both new attorneys. Moreover, this has also been discussed with AUSA Lawrence Bardfeld, who also believes that in excess of 75-80 percent of the work had been completed.

18. That undersigned counsel's concurs with the estimates that 75-80 percent of the work has been completed in each of their cases.

19. That undersigned counsel has already returned Five Thousand Dollars ($5,000.00) directly to the Almasri's, paid Thirty-Five Hundred Dollars ($3,500.00) directly to attorney F. Wesley Blankner at Ahmad Almasri's request and paid Thirty-Five Hundred Dollars ($3,500.00) directly to attorney Richard Docobo at Nadia Almasri's request.

20. That in addition to the Twelve Thousand Dollars ($12,000.00) refunded as set forth above, undersigned counsel additionally cost advanced One thousand Three Hundred Ninety-four Dollars and twenty-three cents ($1,394.23), which has not been reimbursed to undersigned counsel. (Please note that the law firm of NeJame, Harrington & Barker, P.A. does not charge or bill clients for xerox copies, postage, mileage or long distance telephone calls. Although there were costs associated with all the above stated areas, including trips to Tampa and West Palm Beach by automobile, we do not charge back clients for these expenses and they are not reflected herein). A detailed itemization is attached as Exhibit "A".

    a. September 21 Travel to West Palm Beach   $410.73

21. That the total which has been refunded or paid out on behalf of the Almasri's is Thirteen Thousand Three Hundred Ninety-four Dollars and twenty-three cents ($13,394.23), which obviously exceeds the 25 percent (25%) amount.

22. That in an effort to further comply with this Court's Order of April 5, 2001, the following represents a good faith reconstruction of time estimates and work performed and expended by undersigned counsel and his firm on behalf of the Almasri's. Undersigned counsel has handled their cases since August, 2000, and estimates the following time was expended:

| | |
|---|---|
| a. Approximately 25 telephone calls regarding the cases with Assistant United States Attorney Lawrence Bardfeld. We discussed this and estimated the time of the total calls be be 5-10 hours of telephone conversations. | 5 hours |
| b. meeting with the Almasri family in preparation of first appearance | 2 hours |
| c. preliminary hearing in Tampa and meet with clients and family | 8 hours |
| d. meet with clients next day after release | 2 hours |
| e. meet with agents Rule 11 proffer | 2 hours |
| f. multiple discussions with DEA and government | 2 hours |
| g. research on pseudophendrine and methaphatamine | 3 hours |
| h. 5 trips to West Palm Beach (reduced to allow for travel time) | 30 hours |
| i. research for Garcia hearing | 1 hour |
| j. multiple meetings with clients and their family (including plea review) | 8 hours |
| k. calls and investigation regarding defense strategy and theory | 3 hours |
| l. research and discussions with independent law firm on possible defect in psuedophedrine scoring and guidelines | 2 hours |
| m. preparation and research of Nadia Almasri's motion to suppress (draft and final) | 9 hours |
| n. research, counseled with immigration lawyer twice regarding Nadia Almasri's "aggravated felony" issue | 4 hours |
| o. research on Nadia Almasri's misdemeanor plea possibility and guideline applicability- reporting offense alternative to avoid deportation | 3 hours |
| p. read and review discovery and investigation on discovery | 7 hours |
| q. phone conferences with Judge Hurley for different pretrials | 1 hour |

| | |
|---|---|
| r. review and prepare various letters and documents; superceding indictment; trial order; communication with AUSA; letters to client | 1 hour |
| Total | 93 hours |
| At $300.00 per hour | $27,900.00 |
| | |
| | |
| | |
| | |

23. That although the Almasri's have already been refunded an amount which exceeds the percentage of the work performed by undersigned counsel, undersigned counsel is refunding the Almasri's an additional Eight Thousand Seven Hundred Five Dollars and seventy-seven cents ($8,705.77). This represents:

| | |
|---|---|
| $27,900.00 | work performed, as set forth above |
| $ 3,500.00 | paid to Richard Docobo |
| $ 3,500.00 | paid to F. Wesley Blankner |
| $ 5,000.00 | previously refunded to Almasri's |
| $ 1,394.23 | costs advanced on behalf of Almasri's |
| $41,294.23 | |
| $ 8,705.77 | additional amount refunded to Almasri's |
| $50,000.00 | total |

24. That undersigned counsel has made every effort to comply with this Court's order and has mailed the additional funds to the Almasri's as is evidenced by the copy of the attached check (Exhibit "B").

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by mail delivery/facsimile to the Office of the United States Attorney, Lawrence Bardfeld, AUSA, 500 E. Broward Blvd., 7th floor, Ft. Lauderdale, Florida 33394; this ___ day of April, 2001.

                                            **NeJame, Harrington & Barker, P.A.**
                                            One South Orange Avenue, Suite 304
                                            Orlando, Florida 32801
                                            Office No: (407) 245-1232
                                            Facsimile No: (407) 245-2980
                                            Former attorney for Defendants

                                            _/s/ Mark E. NeJame_
                                            Mark E. NeJame, Esquire
                                            Florida Bar No: 310931

```
Apr 10/2001                            NeJame, Harrington & Barker, P.A.                                    Page 1
                                              Client Ledger
                                               ALL DATES
---------------------------------------------------------------------------------------------------------------
Date      Received From/Paid To          Che#           General              Bld                    Trust
   Entry# Explanation                    Rcpt#  Rcpts   Disbs       Fees     Inv#  Acc   Rcpts     Disbs    Balance
---------------------------------------------------------------------------------------------------------------

980   ALMASRI, NADIA
  0242         FEE

Aug  4/2000 Fees To Lawyer MEN                                      50000.00  2320
     21967
Aug  4/2000 BILLING ON INVOICE 2320                         0.00              2320
     21968 FEES    50000.00
Aug  4/2000 NADIA ALMASRI-50 $1K TRANSFER CHECKS  02380  50000.00
     21970 PMT - MEN CLIENT -  NADIA ALMASRI
Aug 22/2000 Expense Recovery             00258            494.00              3315
     27941 AIRFARE - E/BARKER-DELTA TICKET + AGENT
           FEE
Sep 21/2000 Expense Recovery             00237             27.00              2408
     22776 FEDEX DELIVERY X2 09/14/00
Sep 21/2000 Expense Recovery             00238             13.50              2408
     22779 FEDEX DELIVERY 9/19/00
Sep 21/2000 Expense Recovery             00240            410.73              2408
     22827 TRAVEL FARE AND MEALS
Sep 28/2000 BILLING ON INVOICE 2408                         0.00              2408
     23032 DISBS    451.23
Oct 25/2000 Expense Recovery             00246             13.50              2490
     23816 FEDEX DELIVERY 10/25/00
Nov  2/2000 Expense Recovery             00242            420.00              2490
     23783 AIRFARE  DELTA TKT#DL7131331378 - WEST
           PALM
Nov  9/2000 BILLING ON INVOICE 2490                         0.00              2490
     23828 DISBS    433.50
Dec  7/2000 BILLING ON INVOICE 2551                         0.00              2551
     24390 FEES    -405.00
Dec  7/2000 Fees To Lawyer MEN                                       -405.00  2551
     24392 CREDIT FOR CANCELLED AIRFARE
Jan 24/2001 BILLING ON INVOICE 2677                         0.00              2677
     25265
Mar 20/2001 RICHARD DOCOBO               7407           3500.00               3247
     27769 NADIA ALMASRI
Mar 22/2001 F. WESLEY BLANKNER           7410           3500.00               3247
     27771 REFUND NADIA AND ACHMED ALMASRI
Mar 29/2001 AHMED AND NADIA ALMASRI      7445           5000.00               3209
     27475 FULL CASH REFUND - ADDITIONAL ATTY FEES
           TO BE PD AS REPRESENTED IN LETTER
Mar 29/2001 BILLING ON INVOICE 3209                         0.00              3209
     27476 FEES    -5000.00 DISBS     5000.00
Mar 29/2001 Fees To Lawyer MEN                                      -5000.00  3209
     27477 CREDIT PER ALBERT
Apr  5/2001 Expense Recovery             00253            420.50              3246
     27766 AIRFARE DELTA TKT#DL7161884445
Apr  5/2001 BILLING ON INVOICE 3246                         0.00              3246
     27767 DISBS    420.50
Apr  5/2001 BILLING ON INVOICE 3247                         0.00              3247
     27772 FEES    -7000.00 DISBS     7000.00
Apr  5/2001 Fees To Lawyer MEN                                      -7000.00  3247
     27773 REFUND CREDIT PER MEN
Apr  5/2001 AHMED AND NADIA ALMASRI      7479          10000.00               3280
     27834 REFUND
Apr  5/2001 BILLING ON INVOICE 3280                         0.00              3280
     27835 FEES   -10000.00 DISBS   10000.00
Apr  5/2001 Fees To Lawyer MEN                                     -10000.00  3280
     27836 REFUND CREDIT PER MEN
Apr 10/2001 BILLING ON INVOICE 3315                         0.00              3315
     27942 DISBS    494.00
Apr 10/2001 VOID CHK #7479               VOID         -10000.00               3334
     27962 VOID CHK TO ALMASRI
Apr 10/2001 BILLING ON INVOICE 3334                         0.00              3334
     27963 FEES    10000.00 DISBS  -10000.00
Apr 10/2001 Fees To Lawyer MEN                                      10000.00  3334
     27964 CORRECTION
Apr 10/2001 BILLING ON INVOICE 3335                         0.00              3335
     27966 FEES    -8705.77
Apr 10/2001 Fees To Lawyer MEN                                      -8705.77  3335
```

Apr 10/2001
NeJame, Harrington & Barker, P.A.
Page 2
Client Ledger
ALL DATES

| Date Entry# | Received From/Paid To Explanation | Che# Rcpt# | Rcpts | General Disbs | Fees | Bld Inv# | Acc | Rcpts | Trust Disbs | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| Apr 10/2001 27970 | AHMED AND NADIA ALMASRI ADDITIONAL REFUND | 7497 | | 8705.77 | | 3336 | | | | |
| Apr 10/2001 27971 | BILLING ON INVOICE 3336 DISBS   8705.77 | | | 0.00 | | 3336 | | | | |
| Apr 10/2001 27972 | BILLING ON INVOICE 3337 DISBS   -1394.23 | | | 0.00 | | 3337 | | | | |
| Apr 10/2001 27973 | Expense Recovery PAID CREDIT AGAINST REFUND | | | -1394.23 | | 3337 | | | | |

| TOTALS | ┌─────── UNBILLED ───────┐ | | | | ┌─────── BILLED ───────┐ | | | ┌── BALANCES ──┐ | |
|---|---|---|---|---|---|---|---|---|---|---|
| | CHE+ | RECOV | FEES+ | = TOTAL | DISBS + | FEES + | TAX - | RECEIPTS | = A/R | TRUST |
| PERIOD | 0.00 | 0.00 | 0.00 | 0.00 | 21110.77 | 28889.23 | 0.00 | 50000.00 | 0.00 | 0.00 |
| END DATE | 0.00 | 0.00 | 0.00 | 0.00 | 21110.77 | 28889.23 | 0.00 | 50000.00 | 0.00 | 0.00 |

| FIRM TOTALS | ┌─────── UNBILLED ───────┐ | | | | ┌─────── BILLED ───────┐ | | | ┌── BALANCES ──┐ | |
|---|---|---|---|---|---|---|---|---|---|---|
| | CHE+ | RECOV | FEES+ | = TOTAL | DISBS + | FEES + | TAX - | RECEIPTS | = A/R | TRUST |
| PERIOD | 0.00 | 0.00 | 0.00 | 0.00 | 21110.77 | 28889.23 | 0.00 | 50000.00 | 0.00 | 0.00 |
| END DATE | 0.00 | 0.00 | 0.00 | 0.00 | 21110.77 | 28889.23 | 0.00 | 50000.00 | 0.00 | 0.00 |

REPORT SELECTIONS

| | | | |
|---|---|---|---|
| Report: | Client Ledger | | |
| Requested by: | ADMIN | | |
| Finished: | Tuesday, April 10, 2001 at 04:36:43 PM | | |
| Date Range: | ALL DATES | | |
| Matters: | 0242 | | |
| Clients: | All | | |
| Major Clients: | All | Firm Totals Only: | No |
| Responsible Lawyer: | All | Entries Shown - Billed Only: | No |
| Introducing Lawyer: | All | Entries Shown - Disbursements: | Yes |
| Assigned Lawyer: | All | Entries Shown - Receipts: | Yes |
| Type of Law: | All | Entries Shown - Trust: | Yes |
| Sort by Resp Lawyer: | No | Entries Shown - Time or Fees: | Yes |
| New Page for Each Lawyer: | No | Working Lawyer: | No |
| New Page for Each Matter: | No | Incl. Matters with Retainer Bal: | No |
| Totals Only: | No | Incl. Matters with Neg Unbld Disb: | No |
| No Activity Date: | Dec 31, 2199 | Trust Account: | All |
| Ver: | 5.03.20010101 | Show Client Address: | No |

LAW OFFICE OF MARK E. NEJAME, P.A.

```
DATE   : Apr 10/2001
CHE #  : 7497
AMOUNT : $8,705.77
ACCOUNT: GENERAL - 1
PAID TO: AHMED AND NADIA ALMASRI
```

ADDITIONAL REFUND

```
CLIENT: 980 - NADIA ALMASRI
MATTER: 0242
```

---

**LAW OFFICE OF MARK E. NEJAME, P.A.**
OPERATING ACCOUNT
1 SOUTH ORANGE #304
ORLANDO, FL 32801
(407) 245-1232

FIRST UNION NATIONAL BANK
63-751-631

7497

PAY  Eight Thousand Seven Hundred Five ******************************** 77/100

TO THE ORDER OF

AHMED AND NADIA ALMASRI

DATE: Apr 10/2001    AMOUNT: $8,705.77

AUTHORIZED SIGNATURE

⑆000007497⑆ ⑈063107513⑈ 209000105486 9⑆

ADDITIONAL REFUND

---

**LAW OFFICE OF MARK E. NEJAME, P.A.** ORLANDO, FL 32801

```
DATE   : Apr 10/2001                ** GENERAL BALANCES **      7497
CHE #  : 7497                       UNBILLED DISBS:          0.00
AMOUNT : $8,705.77                  A/R BALANCE    :      -7311.54
ACCOUNT: GENERAL - 1
PAID TO: AHMED AND NADIA ALMASRI
ADDITIONAL REFUND
CLIENT: 980 - NADIA ALMASRI
MATTER: 0242
LAWYER: MARK NEJAME                 ** TRUST BALANCES **
```

FEE                                 TRUST BALANCE :           0.00



EXHIBIT "R"